J. SCOTT RUSSO, ESQ.
Nevada Bar No. 6477
jsrusso@russoandduckworth.com
RUSSO & DUCKWORTH, LLP
9090 Irvine Center Drive, 2nd Floor
Irvine, California 92618
Telephone No. (949) 752-7106
Facsimile No. (949) 752-0629

KING & RUSSO, LTD.
PATRICK O. KING, ESQ.
Nevada State Bar No.: 5035
J. SCOTT RUSSO, ESQ.
Nevada Bar No. 6477
patrickking@kingandrusso.com
1021 Country Lane
Gardnerville, NV 89460
Telephone No.: (775) 265-2200
Facsimile No.: (775) 265-2205
*Attorneys for Plaintiff*
*Aloha Medicinals, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA – RENO

| | |
|---|---|
| ALOHA MEDICINALS, INC., | ) CASE NO.:: |
| Plaintiff, | ) DEPT. NO.: |
| vs. | ) **COMPLAINT FOR:** |
| BIRKDALE MEDICINALS, INC., ANTHONY "TOM" PETERS IN HIS INDIVIDUAL CAPACITY AND IN HIS OFFICIAL CAPACITY AS AN OFFICER OF BIRKDALE MEDICINALS, INC., DOES I-X, AND ROE CORPORATIONS 1-X, inclusive, | ) **(I) FALSE DESIGNATION OF ORIGIN – TRADEMARK INFRINGEMENT (15 USC § 1125(a)(1));** |
| Defendants. | ) **(II) UNFAIR COMPETITION (15 USC § 1125(a)(1);** |
| | ) **(III) COMMON LAW TRADEMARK INFRINGEMENT-UNFAIR COMPETITION;** |
| | ) **(IV) UNJUST ENRICHMENT;** |
| | ) **(V) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;** |

-1-

) **(VI) TORTIOUS INTERFERENCE WITH**
) **PROSPECTIVE ECONOMIC ADVANTAGE**
) **THROUGH DEFENDANT'S FRAUDULENT**
) **MISREPRESENTATIONS;**
)
) **(VII) CIVIL CONSPIRACY;**
)
) **(VIII) FRAUD IN THE INDUCEMENT; and**
)
) **(IX) SPECIAL DAMAGES**
)
) **DEMAND FOR JURY TRIAL**
) **(Rule 38(b) F.R.Civ.P)**
)

Plaintiff, Aloha Medicinals, Inc., by and through their counsel of record, complains and alleges of Defendants as follows:

<u>PARTIES</u>

1.     Plaintiff, Aloha Medicinals, Inc. ("Aloha Medicinals"), is and was domiciled in Carson City County, Nevada at all relevant times herein.

2.     Aloha Medicinals is and was a corporation organized and existing under the laws of the State of Nevada at all relevant times herein.

3.     On information and belief, Defendant Birkdale Medicinals, Inc., ("Birkdale") is a Michigan Corporation having its principal place of business in Lake Orion, Michigan.

4.     On information and belief, Defendant Anthony "Tom" Peters in his individual capacity and in his official capacity as an officer of Birkdale resides in Lake Orion, Michigan.

5.     The true names or capacities, whether individual, corporate, associate, representative, or otherwise, of Defendants named herein as Does I-X and Roe Corporations I-X are unknown to Plaintiff who, therefore, sue such Defendants by such fictitious name, and Plaintiff will amend this Complaint to show their true names and capacities when the same have been ascertained.

6.     At all times material hereto, each and every one of the Defendants named herein was the agent, servant, employee, partner and/or joint venturer of each of the other Defendants, and each of

-2-

said Defendants was at all times acting within the course and scope of such agency, service, employment, partnership and/or joint venturer.

JURISDICTION OF THE SUBJECT MATTER

7.    This Court has original jurisdiction of the subject matter of Counts I and II of this Complaint pursuant to Title 28 United States Code §§1331 and 1338(a) and pursuant to Title 15 United States Code §1121(a).   This Court has supplemental jurisdiction of the subject matter of the remaining Counts III - IX pursuant to Title 28 United States Code §1367(a).

8.    Count I is an action for false designation of origin, arising under the Trademark Laws of the United States (The Lanham Act), Title 15 United States Code §1125(a)(1)(A).  This Court has original jurisdiction of the subject matter of Count I pursuant to Title 28 United States Code §§1331 and 1338(a) and pursuant to Title 15 United States Code §1121(a).

9.    Count II is an action for unfair competition arising under the Trademark Laws of the United States (The Lanham Act), Title 15 United States Code §1125(a)(1)(B).  This Court has original jurisdiction of the subject matter of Count II pursuant to Title 28 United States Code §§1331 and 1338(b).

10.   Count III is an action for common law trademark infringement.  As will appear more fully below, the claim which is the subject matter of Count III is so related to other claims in this action which are within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III of the United States Constitution.  This Court has supplemental jurisdiction of the subject matter of Count III pursuant to Title 28 United States Code §1367(a).

11.   Count IV is an action for unjust enrichment.  As will appear more fully below, the claim which is the subject matter of Count IV is so related to other claims in this action which are within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III of the United States Constitution.  This Court has supplemental jurisdiction of the subject matter of Count IV pursuant to Title 28 United States Code §1367(a).

12.     Count V is an action for breach of the covenant of good faith and fair dealing.  As will appear more fully below, the claim which is the subject matter of Count V is so related to other claims in this action which are within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III of the United States Constitution.  This Court has supplemental jurisdiction of the subject matter of Count V pursuant to Title 28 United States Code §1367(a).

13.     Count VI is an action for tortuous interference with prospective economic advantage through Defendants' fraudulent misrepresentations.  As will appear more fully below, the claim which is the subject matter of Count VI is so related to other claims in this action which are within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III of the United States Constitution.  This Court has supplemental jurisdiction of the subject matter of Count VI pursuant to Title 28 United States Code §1367(a).

14.     Count VII is an action for civil conspiracy.  As will appear more fully below, the claim which is the subject matter of Count VII is so related to other claims in this action which are within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III of the United States Constitution.  This Court has supplemental jurisdiction of the subject matter of Count VII pursuant to Title 28 United States Code §1367(a).

15.     Count VIII is an action for fraud in the inducement.  As will appear more fully below, the claim which is the subject matter of Count VIII is so related to other claims in this action which are within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III of the United States Constitution.  This Court has supplemental jurisdiction of the subject matter of Count VIII pursuant to Title 28 United States Code §1367(a).

16.     Count IX is an action for special damages.  As will appear more fully below, the claim which is the subject matter of Count IX is so related to other claims in this action which are within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III

of the United States Constitution.  This Court has supplemental jurisdiction of the subject matter of Count IX pursuant to Title 28 United States Code §1367(a).

PERSONAL JURISDICTION

17.    As will appear more fully below, Defendant Birkdale Medicinals, Inc. and Defendant Anthony Peters (collectively, "Defendants") have significant contacts with the State of Nevada and this District and its activities within the State of Nevada and this District and the effects of its activities with the State of Nevada and this District are such that this Court may exercise personal jurisdiction over Defendants consistently with the Constitution of the State of Nevada and the Constitution of the United States.  These contacts include marketing Defendants' products to consumers, located in Nevada and within this District and elsewhere.  These contacts also include providing Defendants' products to consumers, located in Nevada and within this District and elsewhere and negotiating contracts in Nevada.

VENUE

18.    Plaintiff Aloha Medicinals has its principal office and place of business in Carson City County, Nevada, and is doing business at this location.

19.    A substantial part of the events giving rise to the claims which are the subject matter of this action occurred in this District.  The venue of this action is properly laid in this District pursuant to Title 28 United States Code Section 1391(b) and (c).

GENERAL ALLEGATIONS

20.    Plaintiff Aloha Medicinals business has consisted of and continues to consist of manufacturing and selling high quality supplements to the general public in Nevada and elsewhere.

21.    Since about 1999, Plaintiff Aloha Medicinals has used the trademark ALOHA MEDICINALS for use in connection with the manufacturing and sale of dietary supplements.

22.    Since about 2000, Plaintiff Aloha Medicinals has used the trademark IMMUNE-ASSIST for use in connection with the manufacturing and sale of dietary supplements.  The

-5-

IMMUNE-ASSIST trademark is the subject of Plaintiff's Federal Trademark Registration, Registration No. 2,889,214, registered September 28, 2004.

23.     Since about 2002, Plaintiff Aloha Medicinals has used the trademark IMMUNE-ASSIST 247 for use in connection with the manufacturing and sale of dietary supplements.

24.     Since about 2003, Plaintiff Aloha Medicinals has used the trademark PERFORMAX for use in connection with the manufacturing and sale of dietary supplements.

25.     Since about 2003, Plaintiff Aloha Medicinals has used the trademark CORDYCEPS SINENESIS ALOHAENSIS for use in connection with the manufacturing and sale of dietary supplements.

26.     Since about 2004, Plaintiff Aloha Medicinals has used the trademarks LEVOLAR and LEVOLAR FORTE for use in connection with the manufacturing and sale of dietary supplements.

27.     Since about 2004, Plaintiff Aloha Medicinals has used the trademark RIDOXOLAN PLUS for use in connection with the manufacturing and sale of dietary supplements.

28.     Since about 2005, Plaintiff Aloha Medicinals has used the trademark BIO-SILYMARIN for use in connection with the manufacturing and sale of dietary supplements.

29.     Since about 2005, Plaintiff Aloha Medicinals has used the trademark K-9 IMMUNITY for use in connection with the manufacturing and sale of dietary supplements particularly for use by pets.  The K-9 IMMUNITY trademark is the subject of Plaintiff's Federal Trademark Application, Serial No. 77/559,806.

30.     On information and belief Plaintiff believes Defendants may have entered into a conspiracy with John Saleen to unlawfully provide fraudulent documents to the United States Trade Mark Office, and Plaintiff will amend its Complaint to plead this allegation with more specificity after additional discovery on this issue.

31.     Plaintiff Aloha Medicinals' products are of uniformly high quality and Plaintiff has acquired very significant commercial goodwill which is an important and very valuable asset of

Plaintiff's business.  Based on such goodwill and the expenditures of large sums of money and efforts for advertising and market promotion under its trademarks ALOHA MEDICINALS, IMMUNE-ASSIST, IMMUNE-ASSIST 247, PERFORMAX, CORDYCEPS SINENESIS ALOHAENSIS, LEVOLAR, LEVOLAR FORTE, RIDOXOLAN PLUS, BIO-SILYMARIN, and K-9 IMMUNITY, (collectively "the ALOHA MEDICINALS TRADEMARKS"), Plaintiff Aloha Medicinals has become recognized to consumers as providing dietary supplements of uniformly high quality.

32.     Plaintiff has expended considerable sums of money in developing and maintaining several websites since about 2001. These websites are recognized as one of the leading sources of information on Plaintiff's products, and on the subject matter relating to these products as a whole, as evidenced by the Google ranking which has remained within the top ten results for most keywords associated with these products and the related subject matter. This high Google ranking has been consistent since about 2005.  Each page of these websites has been correctly noted as a Copyright of Aloha Medicinals, with the appropriate date entered on each page as appropriate. Copyright registration has been applied for.

33.     On or about June 2005, Plaintiff entered into an oral agreement with said Defendants, wherein Plaintiff and Defendants negotiated an Agreement for Defendants to distribute Plaintiff's Human and Veterinary dietary supplement products (hereinafter, "Agreement").  In consideration Plaintiff was to provide Defendants distribution rights of said products and technical support in the form of clinical trial data and scientific data and advertising and marketing support.

34.     The "Agreement" specifically sets the Defendants' obligations and provides for Defendants to market and sell Plaintiff's products through Defendants' websites, through direct to consumer sales and through other avenues of sale.

35.     The "Agreement" specifically requires that Defendants will market Plaintiff's products only in their original trade dress and bearing the name and logo of Plaintiff, and not be misrepresented as being manufactured by Defendants or other parties, but bear all of Plaintiff's proper identification

-7-

and certification as allowed or required by law, such as Plaintiff's Organic Certification under the

USDA National Organic Certification Program, and manufacturer's name and address.

36.    Plaintiff paid in excess of $50,000.00 for advertising and packaging on behalf of

Defendants based upon Defendants' promises to not compete with and exclusively represent Plaintiff's

products.

37.    On or about June 2008, Plaintiff contacted Defendants regarding Defendants' failure to

comply with the letter or intent of the distribution agreement, in that Defendants had started relabeling

Plaintiff's products under Defendants' own brand name, removing all identification of Plaintiff as

manufacturer, removed all Plaintiff's distinctive trade dress, name, address, and proper identification

as required or allowed by law.

38.    As of August 2008, pursuant to the terms of the "Agreement" as modified verbally at

the Plaintiffs place of business in Carson City, NV, Defendants gave Plaintiff further assurances by

promising compliances with the "Agreement" specifically agreeing to follow Plaintiff's requirements

for labeling and representing the products to properly identify their source and not to cause confusion

with the public, and to comply with all ethical and legal requirements in regards to labeling and

product representation. In return, Plaintiff agreed to provide custom product packaging with

Defendants' company name and address, as well as provide nationwide advertising at Plaintiff's full

expense representing Defendants as the distributor of Plaintiff's products.

39.    After Plaintiff took all action and expense in creating custom packaging for Defendants

and providing nationwide print advertising to support Defendants' distribution, marketing and sale of

Plaintiff's products, Defendants refused to relabel Plaintiff's products as agreed upon, but rather

retained Defendants' own brand name and misidentification of the products as being manufactured by

Defendants and not by manufacturer.

40.     On information and belief, Defendants made these promises to Plaintiff knowing that Defendants did not intend to perform in order to fraudulently induce Plaintiff to expend money and resources for Defendants.

41.     As of May 2009, Defendants were again notified that they could not continue to use Plaintiff's trademarked names, or technical or clinical data, or customer goodwill unless they used Plaintiff's packaging and trade dress as required and allowed by law. Due to Defendants' continued breaches, Defendants were instructed to stop using Plaintiff's trademarks and technical and clinical data by October 1, 2009 if Defendants remained unwilling to stop using Defendants' own branding and trade dress on Plaintiff's products. Plaintiff offered to buy-back any remaining inventory from Defendants so as not to create any undue hardship on Defendants while Defendants transitioned entirely over to their own brand. Defendants refused to stop, and have continued distributing Plaintiff's products under Defendants' own trade dress and brand name, and continue to use Plaintiff's trademarks. Defendants also are manufacturing, or having manufactured, copy-cat products using imported ingredients, and misrepresenting them to the public as being Plaintiff's authentic and trademarked products, and selling them under Plaintiff's trademarked names, but in Defendants' trade dress and brand name.

42.     Defendants launched a marketing campaign on or about October 1, 2009, using all of Plaintiff's copyrighted websites, clinical and technical data and publications, presenting them as Defendants' own. Defendants continue to use Plaintiff's trademarks, and are manufacturing or having manufactured for them products so labeled, using low cost imported materials and not Plaintiff's authentic materials.

43.     Defendants are misrepresenting to the public that the products Defendants are selling are being manufactured by Plaintiff using Plaintiff's authentic and patent-protected materials, and misrepresenting Defendants' inferior products as being the actual Plaintiff's authentic products which were tested in clinical trials and published in scientific journals. Defendants' misrepresentations are

-9-

causing deception and confusion among the public who believe they are purchasing the authentic, clinically proven, patented and trademarked products from Plaintiff, when in fact they are being supplied copy-cat products made with untested, low cost imported material, while using the trademarked names and using Plaintiff's own copyrighted scientific, technical and marketing support materials in order to deceive the pubic.

44.     Defendants have copied Plaintiff's website to the very last detail, including Plaintiff's name and address and contact information, logo, trade dress and all other aspects of the website with the sole exception of redirecting the "ORDER NOW" button to send the consumer to Defendants' website, where they are offered the chance to purchase the counterfeit goods under Plaintiff's trademarked names, which they have been reading about on what they think is the Plaintiff's website. At no point is the consumer told they are buying a copy-cat product made with low cost imported materials.

45.     Plaintiff Aloha Medicinals is informed and believes that the website copying and misbranding was done at the instruction of Defendants by, Jeff Peters, whom Plaintiff was told by Defendants on many instances was the webmaster for Defendants.

46.     On information and belief, Defendants are deceiving the public and unjustly enriching themselves to the Plaintiff's detriment by misbranding these trademarked products as "MADE IN AMERICA" and as "CERTIFIED USDA ORGANIC" when in fact they are cheap import copies and not authentic American trademarked, patented and USDA Certified Organic goods.

47.     Notwithstanding that Defendants have neither authorization to sell Plaintiff Aloha Medicinals' products nor the right to use Plaintiff's ALOHA MEDICINALS TRADEMARKS, Defendants have commenced an illicit campaign to represent themselves as Plaintiff Aloha Medinals to cause consumers to be confused and deceived as to the origin of their products.

-10-

48. Plaintiff has received many complaints from consumers complaining that their dogs have been made sick from Defendants' inferior product. These consumers were confused about the origin of the products and believed that their pets were made ill from Plaintiff's product.

49. Defendants have, in connection with the marketing and sale of nutritional supplements, used in commerce, words and names and false designations of origin, in Nevada and elsewhere, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Plaintiff Aloha Medicinals, and which are likely to cause confusion, or to cause mistake or to deceive as to the origin, sponsorship, or approval of Plaintiff Aloha Medicinals' goods and commercial activities by Defendants.

50. Defendants' activities include the unauthorized use of Plaintiff's ALOHA MEDICINALS TRADEMARKS including ALOHA MEDICINALS, IMMUNE-ASSIST, IMMUNE-ASSIST 247, PERFORMAX, CORDYCEPS SINENESIS ALOHAENSIS, LEVOLAR, LEVOLAR FORTE, RIDOXOLAN PLUS, BIO-SILYMARIN, and K-9 IMMUNITY.

51. Defendants have created websites bearing Plaintiff's ALOHA MEDICINALS TRADEMARKS leading third party consumers to believe that they are viewing Plaintiff's websites when in fact they are viewing Defendants' websites and leading consumers to believe they are purchasing Plaintiff's products from Plaintiff when in fact they are purchasing Defendants' products from Defendants.

52. In addition to displaying Plaintiff's ALOHA MEDICINALS TRADEMARKS visibly on Defendants' websites to confuse and deceive consumers, Defendants have inserted Plaintiff's ALOHA MEDICINALS TRADEMARKS into Defendants' websites as hidden metatags in order to divert consumers to Defendants' websites.

53. Defendants' campaign to illicitly deceive consumers further includes bidding on Plaintiff's ALOHA MEDICINALS TRADEMARKS, including ALOHA MEDICINALS and K9 IMMUNITY, within Google's® Awards® program to divert consumers attempting to purchase from

-11-

Plaintiff's to Defendants' websites where consumers are deceived into purchasing Defendants' products believing Plaintiff to be the source for such products. Defendants' Google's® Awards® advertisements use such terms as "Immune Assist Critical Care Formula – Click here to view our Clinical Trials". When the consumer clicks on such an advertising link, they are directed to Defendants' website where Defendants are presenting the Plaintiff's actual clinical trial data but represented them as Defendants' own in an effort to deceive the consumer into purchasing Defendants copy-cat product, believing it to be the authentic, clinically proven trademarked product made by Plaintiff.

54.     Moreover, Defendants' are misrepresenting the nature, characteristics, qualities, and origin of Defendants' goods.

55.     On information and belief, Defendants are claiming that their products contain a patented hybrid Cordyceps when in fact Defendants' products do not contain any patented hybrid Cordyceps.

56.     Defendants are claiming that their Cordyceps Sinensis are the most potent in the world because of being produced by Plaintiff's patented process when in fact Defendants' Cordyceps Sinensis are not the most potent in the world and they are not made by Plaintiff's patented process.

57.     Defendants are claiming that they are the only producer of Cordyceps Sinensis Alohaenis when in fact Defendants do not produce "Cordyceps Sinensis Alohaenis" which is Aloha Medicinals trademark name.

58.     Defendants are claiming that their hybrid Cordyceps are 4x stronger than any other when in fact Defendants' do not produce a hybrid Cordyceps and Defendants' Cordyceps are not 4x stronger than any other.

59.     Defendants identify their particular products as "Not an Import, All American" when in fact Defendants' identified products are an import and not all American.

60.     Defendants are referring consumers to Plaintiff Aloha Medicinals' research, scientific and clinical data and claiming such research, scientific and clinical data apply to Defendants' products when in fact Plaintiff Aloha Medicinals' research, scientific and clinical data do not apply to Defendants' products.

61.     Based upon information and belief and with additional discovery this Complaint may be amended to include among others the following additional Defendants John Saleen, JHS Natural Products, Jeff Peters, Anthony (Tony) Peters, Mark Squibb, Whole Health Research Alliance, LLC.

## COUNT I

## FALSE DESIGNATION OF ORIGIN

62.     Plaintiff Aloha Medicinals realleges paragraphs 1 through 61, inclusive, and incorporates them by reference as though specifically referred to herein.

63.     This is a civil action for false designation of origin arising under the Trademark Laws of the United States, Title 15 United States Code § 1125(a)(1).  This Court has original jurisdiction of the subject matter of this action pursuant to Title 28 United States Code §§ 1331 and 1338(a).  Subject matter jurisdiction does not depend upon the amount in controversy or diversity of citizenship of the parties.

64.     Defendants have, in connection with goods sold to consumers, used in commerce, words and names and false designations of origin, in Nevada and elsewhere, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Plaintiff Aloha Medicinals, and which are likely to cause confusion, or to cause mistake or to deceive as to the origin, sponsorship, or approval of Plaintiff Aloha Medicinals' goods and commercial activities by Defendants.

65.     Plaintiff Aloha Medicinals believes that it has been damaged and/or is likely to be damaged by Defendants' aforesaid use of the aforesaid false words, names, and false designations of origin.

66.     The damage suffered by Plaintiff Aloha Medicinals is and will be irreparable, because of aforesaid loss and damage to Plaintiff Aloha Medicinals' aforesaid business reputation and goodwill associated with its trademarks, and because the true extent of Plaintiff's monetary damages are not readily ascertainable and will be provable only with great difficulty.  Defendants' aforesaid activities will continue until enjoined by this Court.

67.     Defendants' activities, as aforesaid, were willful and intentional.

COUNT II

UNFAIR COMPETITION

68.     Plaintiff Aloha Medicinals realleges paragraphs 1 through 67, inclusive, and incorporates them by reference as though specifically referred to herein.

69.     This is a civil action for false designation of origin arising under the Trademark Laws of the United States, Title 15 United States Code § 1125(a)(1).  This Court has original jurisdiction of the subject matter of this action pursuant to Title 28 United States Code §§ 1331 and 1338(a).  Subject matter jurisdiction does not depend upon the amount in controversy or diversity of citizenship of the parties.

70.     Defendants commenced and continue their use Plaintiff's ALOHA MEDICINALS TRADEMARKS, in order to palm off its goods in the State of Nevada, in this District and elsewhere, as emanating from, or as the same as, or as sponsored, approved or licensed by Plaintiff.

71.     Defendants have and continue to misrepresent the nature, characteristics, qualities, and origin of Defendants' goods.

72.     By virtue of Defendants' aforesaid palming off, false designation of origin, trademark infringement and/or service mark infringement, and continued misrepresentation of the nature, characteristics, qualities and origins of Defendants' goods, Defendants have unfairly competed and are unfairly competing with Plaintiff Aloha Medicinals in the State of Nevada, in this District, and elsewhere.

-14-

73.     The damage suffered by Plaintiff Aloha Medicinals is and will be irreparable, because of aforesaid loss and damage to Plaintiff Aloha Medicinals' aforesaid business reputation and goodwill associated with its trademarks and because the true extent of Plaintiff's monetary damages are not readily ascertainable and will be provable only with great difficulty.  Defendants' aforesaid unfair competition will continue until enjoined by this Court.

74.     Defendants have greatly profited from its aforesaid unfair competition in the State of Nevada, in this District, and elsewhere and has been unjustly enriched.

COUNT III

COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

75.     Plaintiff Aloha Medicinals realleges paragraphs 1 through 74, inclusive, and incorporates them by reference as though specifically referred to herein.

76.     This is a civil action for common law trademark infringement and unfair competition. The claim which is the subject matter of this Count is so-related to the claims which is the subject matter of Count I and II, that they form part of the same case or controversy under Article III of the United States Constitution.  This Court has supplemental jurisdiction of the subject matter of this Count pursuant to Title 28 United States Code § 1367.

77.     Plaintiff Aloha Medicinals' business has consisted and continues to consist of manufacturing and selling nutritional supplements to consumers and distributors within Nevada and elsewhere.

78.     Plaintiff Aloha Medicinals is informed and believes, and on that information and belief alleges that Defendants provide goods to the same market as Plaintiff Aloha Medicinals, under Plaintiff's ALOHA MEDICINALS TRADEMARKS.

79.     Defendants' use of Plaintiff's ALOHA MEDICINALS TRADEMARKS infringes Plaintiff Aloha Medicinals' rights to the exclusive use of Plaintiff's ALOHA MEDICINALS TRADEMARKS, because such use is likely to cause confusion, or to cause mistake, or to deceive as to

-15-

the affiliation, connection or association of Defendants with Plaintiff Aloha Medicinals, and is likely to cause confusion, or to cause mistake or to deceive as to the origin, sponsorship, or activities by Defendants.

80.     Defendants have misrepresented and continue to misrepresent the nature, characteristics, qualities, and origin of Defendants' goods.

81.     By virtue of Defendants' aforesaid palming off, false designation of origin, trademark infringement and/or service mark infringement, and continued misrepresentation of the nature, characteristics, qualities and origins of Defendants' goods, Defendants have infringed upon and continue to infringe upon Plaintiff's trademarks and unfairly competed and are unfairly competing with Plaintiff Aloha Medicinals in the State of Nevada, in this District, and elsewhere.

82.     The damage suffered by Plaintiff Aloha Medicinals is and will be irreparable, because of aforesaid loss and damage to Plaintiff Aloha Medicinals' aforesaid business reputation and goodwill associated with its tradename, and because the true extent of Plaintiff's monetary damages are not readily ascertainable and will be provable only with great difficulty.  Defendants' aforesaid activities will continue until enjoined by this Court.

83.     Defendants' aforesaid trademark infringement and unfair competition was willful.

COUNT IV

UNJUST ENRICHMENT

84.     Plaintiff Aloha Medicinals realleges paragraphs 1 through 83, inclusive, and incorporates them by reference as though specifically referred to herein.

85.     Defendants acted to unjustly enrich themselves at Plaintiff's expense through their actions aforementioned, against fundamental principals of justice, equity and good conscience.

86.     As the natural, actual, direct, and proximate result and cause of the intentional acts and/or omissions of Defendants, Plaintiff has damages in excess of Fifty Thousand Dollars

($50,000.00) including interest thereon in an amount to be determined at the time of the trial in this matter.

COUNT V

BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

87.    Plaintiff Aloha Medicinals realleges paragraphs 1 through 86, inclusive, and incorporates them by reference as though specifically referred to herein.

88.    Plaintiff agreed to make special packaging for Defendants, and to place nationwide advertising at Plaintiff's expense to generate sales for Defendants of Plaintiff's trademarked products, in exchange for Defendants acting in good faith as a distributor of Plaintiff's trademarked goods.

89.    Defendants, made numerous representations to Plaintiff that they would represent and distribute Plaintiff's trademarked goods and not substitute other goods, misrepresented as Plaintiff's authentic trademarked goods and to act in good faith as Plaintiff's authorized distributor.

90.    As a result, Plaintiff has been damaged and has been required to retain attorneys to file and prosecute this matter and has incurred, and will continue to incur, costs and attorneys' fees in an amount not yet known but subject to proof.  Upon prevailing in this action, Plaintiff shall be entitled to an award of damages and reasonable costs and attorneys' fees.

COUNT VI

TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

THROUGH DEFENDANTS FRAUDULENT MISREPRESENTATIONS

91.    Plaintiff Aloha Medicinals realleges paragraphs 1 through 90, inclusive, and incorporates them by reference as though specifically referred to herein.

92.    Defendants have a duty to conduct themselves in a reasonable manner and not to mis-represent material facts to Plaintiff or mislead Plaintiff regarding same.

93.    Defendant Tom Peters' statement that Defendants would sell only authentic goods manufactured by Plaintiff and to not misbrand Plaintiff's goods with Defendants' own brand, unless

approved by Plaintiff. Peters' statement was intentionally and willfully made as evidenced by the fact that at the time this promise was made by Defendants, the Defendants were already in negotiation with an importer of Chinese raw materials, JHS Natural Products of Eugene, Oregon, to purchase raw materials and produce a copy-cat counterfeit product, which Defendants at the time of the promise intended to market tortuously using Plaintiff's trademark. Defendants made these statements to induce Plaintiff to expend money on advertising, and packaging and provide other marketing support on behalf of Defendants and to provide Defendants with access to proprietary information and products.

94.     As the natural, actual, direct, and proximate result and cause of the acts and/or omissions of Defendants, the Plaintiff has damages in excess of Fifty Thousand Dollars ($50,000.00) including interest thereon in an amount to be determined at the time of the trial in this matter.

95.     It has become necessary for Plaintiff to engage the services of an attorney to prosecute this matter.  Plaintiff, therefore, is entitled to an award of attorney's fees as damages.

COUNT VII

CIVIL CONSPIRACY

96.     Plaintiff Aloha Medicinals realleges paragraphs 1 through 95, inclusive, and incorporates them by reference as though specifically referred to herein.

97.     On information and belief Defendants' intentional conduct described herein was a wrongful act of conspiring with John Saleen of JHS Natural Products to deceive the public through the manufacture and supply of counterfeit products, manufactured using cheap imported materials, and representing them as trademarked and patented authentic goods made in America by Plaintiff.

98.     On information and belief, Defendants' intentional conduct was a wrongful act of conspiring with web master, Jeff Peters and/or other unknown webmasters to deceive the public through the copy and reproduction of more than 500 copyright pages of Plaintiff's website and from Plaintiff's printed materials, and passing off these websites and printed materials as the property of Defendants. All such copied website and printed materials have been improperly notated "Copyright

(date) Birkdale Medicinals" when in fact they were all properly marked in the original context as "Copyright (date) Aloha Medicinals".

99.     As the natural, actual, direct, and proximate result and cause of the intentional acts and/or omissions of Defendants, Plaintiff has damages in excess of Fifty Thousand Dollars ($50,000.00) including interest thereon in an amount to be determined at the time of the trial in this matter.

COUNT VIII

FRAUD IN THE INDUCEMENT

100.     Plaintiff Aloha Medicinals realleges paragraphs 1 through 99, inclusive, and incorporates them by reference as though specifically referred to herein.

101.     Plaintiff alleges: (a) that Defendants made false representations to Plaintiff on numerous occasions that they would represent and sell to the public only Plaintiff's authentic products, bearing Plaintiff's tradenames and in Plaintiff's approved presentation and packaging; (b) such false representations were made with Defendants' knowledge and/or belief that the representations were false and/or with the knowledge that they had an insufficient basis for making the representations; (c) that Defendants' intention was to induce Plaintiff to consent to the "Agreement's" formation; (d) that Plaintiff justifiably relied upon said misrepresentation, and Plaintiff suffered and continues to suffer damages resulting from such fraudulent misrepresentation.

102.     On or about August 2008, Defendants promised Plaintiff that if Plaintiff agreed to provide Defendants with advertising and specialized packaging for the exclusive use of Defendants, Defendants would fully perform as agreed.

103.     In consideration of the Defendants' promises, Plaintiff expended considerable time, energy, effort and funds in excess of sixty thousand dollars for the benefit of Defendants.  See, Exhibit "A".

104.   Specifically, Tom Peters stated on the telephone to John Holliday and Roger Scott: "My Cousin Tony (On information and belief Cousin Tony is known to all parties involved as Anthony Peters, President of Detroit Sausage Company Inc. and a known participant in managing the course and activities of Defendants.) will finance a major marketing effort of your products if you package the products specifically for me with my company name and contact information. Tony has agreed to put up $100,000 but he wants you to help with the advertising and with the special packaging."

105.   On information and belief, at the time Tom Peters made these statements he knew that they were false or were made with the intent to deceive Plaintiff because at the time, Tom Peters was engaged in preparations to create directly competing products unbeknownst to Plaintiff.

106.   The statements listed above induced Plaintiff's reasonable reliance thereon and was the actual and proximate cause of the Plaintiff's damages alleged herein.

107.   As the natural, actual, direct, and proximate result and cause of the acts and/or omissions of Defendants, the Plaintiff has damages in excess of Fifty Thousand Dollars ($50,000.00) including interest thereon in an amount to be determined at the time of the trial in this matter.

108.   It has become necessary for Plaintiff to engage the services of an attorney to prosecute this matter. Plaintiff is therefore entitled to an award of attorney's fees as damages.

109.   As a direct result of the intentional, willful, and malicious conduct, committed with oppression and/or reckless disregard for the consequences by Defendants, Plaintiff is entitled to punitive damages in an amount to be determined by this court.

COUNT IX

SPECIAL DAMAGES

110.   Plaintiff Aloha Medicinals realleges paragraphs 1 through 109, inclusive, and incorporates them by reference as though specifically referred to herein.

111   Plaintiff has been required to obtain legal services in connection with the present action and has incurred attorneys' fees and costs, and will continue to incur fees and costs in the future.

-20-

112.   The attorneys' fees that Plaintiff has and will incur are the natural and proximate consequence of the wrongful conduct referred to above and in the first through eighth causes of action.

PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)   For a temporary restraining order and a preliminary and permanent injunction, restraining Defendants its officers, agents, servants, employees and attorneys and those persons in active concert or participation with it from further acts of false designation of;

2)   For a temporary restraining order and a preliminary and permanent injunction, restraining Defendants its officers, agents, servants, employees and attorneys and those persons in active concert or participation with it from misrepresenting the nature, characteristics, qualities, or geographic origin of Defendants' goods;

3)   For its reasonable costs and attorneys fees herein incurred;

4)   For judgment against Defendants in the amount of its damages in consequence of the aforesaid false designation of origin and misrepresentations, to the extent such damages can be ascertained;

5)   For punitive damages in a sum to be fixed by the Court, in consequence of Defendants' willful false designation of origin, as aforesaid;

6)   For special damages to be determined at the time of trial; and

7)   For such other and further relief as the Court shall deem meet and proper in the premises.

DEMAND FOR JURY TRIAL

Plaintiff Aloha Medicinals demands a jury trial in accordance with Rule 38(b) F.R.Civ.P.

DATED this 29th day of October, 2009.

By:   _Patrick O. King_
PATRICK O. KING, ESQ.
*Attorneys for Plaintiffs Aloha Medicinals, Inc.*

-21-